IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                         CASE NO.: 1:05cr6-SPM/AK

ALEX JUAN GARRISON,

      Defendant.

_____/

## ORDER ON MOTIONS TO SUPPRESS

Defendant filed a series of motions to suppress (docs. 17, 23, 27).

Altogether he raised four issues: (1) whether the warrant to search his residence

was supported by probable cause, (2) whether the statements he made to law

enforcement at his residence were coerced, (3) whether his questioning on

January 31, 2005 violated his right to counsel, and (4) whether the search of the

truck that he was using was lawful.  By separate order (doc. 34), the Court

addressed the first issue, which did not require an evidentiary hearing.  On the

remaining issues, the Court held an evidentiary hearing on June 8, 2005 and a

continuation of the evidentiary hearing on July 8, 2005.

### 1.  Statements Made at Residence

Alachua County Sheriff deputies arrested Defendant on September 29,

2004, during the execution of a search warrant at his grandparents' house, where

he resides.  When the officers arrived at the house, Defendant was outside

clearing brush and loading branches into the back of a pick-up truck.  The

officers secured and handcuffed Defendant immediately.  Defendant's sister and

her two children were on the front porch and Defendants' grandparents were in

the living room as other officers approached the house.  The officers secured the

house without incident, taking care not to point their guns during the process

because of the children.

      Although Defendant contends that the officers coerced him at the house to

make statements by shouting and threatening to withhold medical treatment from

his grandfather, all of the testimony at the hearing was to the contrary.  According

to Defendant's grandmother, Mavis Garrison, she and Defendant's grandfather,

Albert Garrison, were startled when the officers entered the house.  Mr. Garrison

had difficulty breathing, but he calmed down.  The officers asked Mr. Garrison if

he needed his oxygen bottle, and he responded that he did not.  Mr. and Mrs.

Garrison were taken to the porch, where Mr. Garrison was able to sit and relax.

Defendant's sister and her two children also stayed on the porch.  Later they

requested, and were permitted, to leave so Defendant's sister could go to work.

No one, other than Defendant, was handcuffed.

      In the meantime, the officers led Defendant inside the house to the living

room and Defendant was able to see Mr. Garrison on the porch as he passed.  A

short while later, Mrs. Garrison joined Defendant in the living room where the

officers presented the search warrant and explained their purpose for being

there.  Defendant was then given his Miranda warnings and agreed to answer

questions.  Defendant revealed that he had drug money and crack cocaine in a

shoe box in his bedroom.  The officers searched Defendant's bedroom and found

a large sum of money.  They also found crack cocaine, not in a shoe box but in a

cardboard box that had contained a cellular telephone.

　　　According to the testimony of all of the witnesses, the officers remained

professional as they executed the search warrant.  They did not shout at or

threaten anyone in the house, including Defendant.  The only evidence

suggestive of coercion is Mrs. Garrison's testimony that she heard an officer say

that the house would be taken.  No further context for the statement was given

and it is unknown to whom the statement was made.  The officers who testified at

the hearing denied making or hearing a statement that the house would be taken.

Even assuming, however, that the statement was made, the evidence concerning

it falls far short of establishing that the officers threatened Defendant with taking

the house if Defendant refused to waive his Miranda rights.

　　　Threats toward a Defendant can vitiate a Defendant's post-Miranda

consent to make statements.  See United States v. Jones, 32 F.3d 1512, 1516-

17 (11th Cir. 1994).  The Court must determine if, "under all of the surrounding

circumstances," the statements were the product of the defendant's "'free and

rational' choice" or the product of coercive pressures that overcame his free will.

Id. (quoting United States v. Vera, 701 F.2d 1349, 1364 (11th Cir. 1983).

"Sufficiently coercive conduct normally involves subjecting the accused to an

exhaustingly long interrogation, the application of physical force or the threat to

do so, or the making of a promise that induces a confession." Id.  "Isolated

incidents of police deception, and discussions of realistic penalties for

cooperative and non-cooperative defendants, are normally insufficient to

preclude free choice."  Id.

The evidence at the hearing established that the officers made no threats

or unreasonable show of force.   The officers did not subject Defendant or the

others at the house to harsh conditions, nor did they make false promises to

Defendant to induce him to make a statement.  The officers advised Defendant of

his Miranda rights after which Defendant freely and voluntarily gave a statement.

Accordingly, there is no basis to suppress Defendant's statements and

Defendant's motion to suppress on this ground will be denied.

**2.  Right to Counsel**

After the search on September 29, 2004, Defendant was booked at the

Alachua County Jail on state charges.  A lawyer was appointed to represent

Defendant but he remained in jail.

On January 25, 2005, a federal grand jury issued an indictment charging

Defendant with federal drug crimes.  On January 31, 2005, a federal agent with

the Drug Enforcement Administration (DEA) arrested Defendant at the Alachua

County Jail and removed him to the DEA office for initial processing on the

federal indictment.  While at the DEA office, Defendant signed a written waiver of

his Miranda rights and agreed to speak to the DEA agent.  The DEA agent did

not inform Defendant's state-appointed lawyer of this encounter.

Defendant argues that his Sixth Amendment right to counsel was violated when the DEA agent initiated contact with Defendant without first informing his state-appointed lawyer.  A defendant who has invoked his Sixth Amendment right to counsel cannot be questioned by law enforcement outside the presence of counsel.  Patterson v. Illinois, 487 U.S. 285, 292 (1988).  However, this right is offense specific, meaning that it attaches only to offenses that are actually charged.  Id.

Thus, while Defendant had with respect to his state charges a Sixth Amendment right not to be questioned outside the presence of his lawyer, that right did not transfer to his federal charges.[1]  On Defendant's federal charges, Defendant could be questioned so long as he was advised of his rights per Miranda and made a valid waiver of those rights.  Id. at 292-93.   The testimony at the evidentiary hearing established that Defendant was advised of his rights, that he understood them, and that he made a valid waiver.  He was not coerced to do so with threats or promises.  Accordingly, the Court finds no basis to suppress the statements Defendant made and Defendant's motion to suppress on this ground will be denied.

------

[1]  Although Defendant notes that the conduct underlying the state and federal offenses are the same, the offenses are not considered the same for Sixth Amendment purposes.  See United States v. Avantis, 278 F.3d 510, 518 (5th Cir. 2002) (holding that where two separate sovereigns charge a defendant for the same criminal conduct, the Sixth Amendment right to counsel does not extend beyond the offense charged by that sovereign).

### 3.  Search of Truck

Defendant argues that officers illegally searched the pick-up truck that he was using for yard work when he was arrested on September 29, 2004. Although the officers had a warrant to search the residence, the warrant made no specific mention of the pick-up truck.  Therefore, to be covered by the warrant, the pick-up truck would need to be located within the curtilage of the residence and capable of harboring objects of the search.  See United States v. Borno, 946 F.Supp. 972, 976 (M.D. Fla. 1996).

Curtilage is the area around the home which "harbors those intimate activities associated with domestic life and the privacies of home."  United States v. Hall, 47 F.3d 1091, 1097 (11th Cir. 1995) (quoting United States v. Dunn, 480 U.S. 294, 301 n. 4 (1987)).  In determining whether an area lies within the curtilage, four factors should be considered:

    a.     the proximity of the area to the home,

    b.     whether the area is within an enclosure surrounding the home,

    c.     the use of the area, and

    d.     the steps taken to protect the area from observation by the public.

Id., 480 U.S. at 301.   A home's curtilage does not necessarily extend to the property line.  United States v. Redmon, 138 F.3d 1109, 1112 (7th Cir. 1998).

In this case, the pick-up truck was parked fairly close to the house, at the end of a dirt road, in an area that the residents normally used for parking.  The house is in a relatively isolated, rural area and the dirt road leading from it passes

one other residence before connecting to a paved road.

The house itself is surrounded by a green lawn and enclosed by trees and other landscaping materials.  The parking area is just outside the landscaped area.  It is not enclosed and it does not appear to be a place where the intimate activities of the home take place.  The parking area is near power lines and a railroad track, and probably beyond the property line.  Taking all of the factors into consideration, the Court finds that the truck was not located within the curtilage.

The search of the truck, however, was still valid even though it was not authorized by the search warrant.  A vehicle may be searched without a warrant when there is probable cause to believe that contraband is in the vehicle. Pennsylvania v. Labron, 518 U.S. 938 (1996).  Although the truck was not strictly within the curtilage, it was in Defendant's possession and parked near the house. The officers, furthermore, observed in plain view a cellular telephone box inside the truck.

Given that Defendant was actually using the truck, that it was just outside the curtilage yet still close to the residence, and that it had inside a cellular telephone box similar to the one Defendant used in his bedroom to store drugs, the officers had probable cause to search the truck.  The illegal drugs that were the subject of the search warrant could just as easily have been concealed in the truck as in any other object on the premises.  The officers, who had probable cause to believe drugs would be found in the residence, thus had probable cause

to believe that illegal drugs would be found in the truck.  Accordingly, Defendant's motion to suppress as to this ground will be denied.

### 4.  Conclusion

There are no grounds for granting Defendant's motions to suppress. Defendant's statements at the time of his arrest on September 29, 2004 were knowingly and voluntarily made.  On January 31, 2005, the DEA agent did not violate Defendant's Sixth Amendment right to counsel by initiating contact with Defendant on his federal offenses without first notifying Defendant's state-appointed lawyer.  Finally, although the truck was not located within the curtilage of Defendant's residence, the search of the truck was valid because it was supported by probably cause.  Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's motions to suppress (docs. 17, 23, 27) are denied.

DONE AND ORDERED this 1st day of August, 2005.

_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge